*792 OPINION OF THE COURT
Margaret Taylor, J.
At bar are two holdover summary proceedings brought by the landlord, Saljen Realty Corp., against the Human Resources Administration Crisis Intervention Services and St. Lukes-Roosevelt Hospital Center Ambulatory Mental Health Services. (Hereafter both will be referred to as the Service Centers.) The named respondents, both occupying space in the Capitol Hall Hotel, provide for many of the approximately 240 tenants in this single-room occupancy facility (SRO) free services that include medical, psychiatric and alcoholism counseling, hot meals, recreational activities, socialization counseling, assistance with government benefits applications, and outreach services to the homebound and isolated who need them. Under the respondents’ agreement with the landlord, no rent is paid for the space they occupy.
In each proceeding the landlord alleges that the respondent Service Center is a licensee whose permission to remain has been revoked and that, pursuant to RPAPL 713, the petitioner is entitled to possession of its space.
By motion the tenants of the Capitol Hall Hotel (tenants) and the West Eighty-Seventh Street 100 Block Association (Block Association) seek (1) to intervene as parties; (2) consolidation of the two summary proceedings; and (3) summary judgment dismissing the petitions on the ground that the landlord is attempting to eliminate “required services” in violation of the Code of the Metropolitan Hotel Industry Stabilization Association, Inc. (METHISA Code). The landlord cross-moves for summary judgment on the ground that since the named respondents are licensees unprotected by the METHISA Code they may not invoke that code to bar their eviction.
INTERVENTION
The tenants and the Block Association base their plea for intervention upon the contention that the space and services provided by the named respondents constitute an essential part of the tenants’ contract with the landlord and that under the METHISA Code they cannot be curtailed unilaterally. The proposed intervenors assert that *793 they alone have standing to raise these defenses and that their rights are in serious jeopardy in the instant proceedings.
Clearly, the tenants of the Capitol Hall Hotel have a real and substantial interest in the determination of these proceedings. Indeed, the rights that they and the Block Association raise are identical to the affirmative defenses raised by the named respondents, and a resolution of the matters contested by the present parties will also necessarily decide the factual and legal issues raised by the tenants. Intervention by permission by some representative of the tenants is therefore indicated. (See CPLR 1013.)
But the tenants’ stake in this litigation is greater than that required for permissive intervention. They appear to be the intended third-party beneficiaries to the agreements between the landlord and the Service Centers. Their interest in this litigation may not be adequately represented by the named respondents’ assertion of these just tertii claims and, although they are the persons primarily interested in the continued and uninterrupted availability of the services furnished by the named respondents, they will or may be bound by the judgment that will be rendered in these proceedings. They are, therefore, entitled to intervention as of right, and their motion to intervene is hereby granted. (CPLR 1012, subd [a], par 2; Matter of Cavages, Inc. v Ketter, 56 AD2d 730; Matter of Village of Spring Val. v Village of Spring Val. Housing Auth., 33 AD2d 1037; 316 West 95 St. Hotel Corp. v Crisis Intervention Servs., L&T 67809 [Civ Ct, 1981].)
The Block Association consists of many of the tenants in the subject premises plus other residents of the 100 West 87 Street Block. The Block Association alleges that it was instrumental in establishing the two Service Centers in the Capitol Hall Hotel, that it contributes personal and fiscal resources to the centers’ maintenance, and that non-tenant members of the association visit and use the facilities and express an avid interest in the continued availability of these services to preserve the well-being and stability of the community. These considerations might constitute a separate set of interests in the outcome of this litigation (Glen Head-Glenwood Landing Civic Council v *794 Town of Oyster Bay, 109 Misc 2d 376, 378). However the Block Association’s answer asserts essentially the same defenses as those ably and adequately presented by the tenants. As to those defenses, the Block Association’s interest is somewhat remote. Whereas representation on behalf of the tenants is necessary for the legal issues to be fully presented, to duplicate their representation by permitting the Block Association to intervene would encumber the proceedings without aiding their resolution. Accordingly the Block Association’s motion to intervene is denied without prejudice to their again moving to intervene if they assert legal interests separate and distinct from those of the tenants.
CONSOLIDATION
In view of the above discussion, consolidation of the two holdover proceedings is clearly warranted. The two proposed evictions raise almost identical factual and legal issues (CPLR 602, subd [a]), and, indeed, the petitioner does not oppose consolidation. The proceedings at bar are hereby consolidated; the summary judgment motions made by both sides will be considered together.
SUMMARY JUDGMENT: THE JURISDICTION OF THIS COURT
Before reaching the merits of the tenants’ summary judgment motion (i.e., whether evicting the Service Centers is an impermissible curtailment of “required services” under the METHISA Code), the court must first rule as to whether it has jurisdiction to decide that question. Petitioner contends that the court lacks jurisdiction and that only the Conciliation and Appeals Board (C.A.B.) may determine what is a “required service” within the meaning of the METHISA Code. However, none of the cases cited by petitioner supports this proposition. Many of those cases were article 78 proceedings brought to review a C.A.B. decision already rendered. There, the courts, loath to disturb the C.A.B.’s determination unless it was arbitrary, capricious or unsupported by the evidence, held that the C.A.B. is the proper agency to decide the “required services” issue. (See, e.g., Matter of Howard—Carol Tenants’ Assn. v New York City Conciliation & Appeals Bd., 64 AD2d 546; Matter of Fresh Meadows Assoc. v Conciliation *795 & Appeals Bd., 88 Misc 2d 1003; Matter of Sherwood Assoc. v Conciliation & Appeals Bd., NYLJ, Sept. 22, 1971, p 2, col 3.) None of the cases cited addressed the situation at bar, where the C.A.B. has not spoken.
In 520 East 81st St. Assoc. v Lenox Hill Hosp. (76 Misc 2d 892, affd 38 NY2d 535), although the tenants had filed a complaint with the C.A.B. which had not been passed upon prior to the trial, the Appellate Term reversed the trial court’s award of partial summary judgment to petitioner landlord, holding that the Rent Stabilization Code applied to the premises in question and that the landlord “did not have any grounds for eviction under (the applicable) sections of the code.” (76 Misc 2d 892, 893.) The Appellate Term directed that the landlord’s petition be dismissed. No case has been found which holds that where there has been no prior determination by the C.A.B. the lower court should refrain from deciding that a holdover petition must fail when the Rent Stabilization Code applies but has not been complied with.
More particularly, the Civil and Housing Courts have concurrent jurisdiction with the appropriate C.A.B. in regard to definitional questions the resolution of which determines the applicability vel non of the appropriate code. They are in error when they refuse to exercise that jurisdiction, absent an ongoing proceeding before the C.A.B. (Walsh v Sommerville, 75 AD2d 511, 512; Crystal Mgt. v Mullen, NYLJ, Jan. 12, 1981, p 12, col 2 [App Term, 1st Dept].) Where the C.A.B. has either withheld its hand or where, as here, no application to the C.A.B. has been instituted, it is inappropriate for the court to leave the parties indefinitely in limbo by deferring to the administrative agency. (Crystal Mgt. v Mullen, supra; El Kam Realty Co. v Kayton, 99 Misc 2d 1080.) In Walsh v Sommerville (supra) and in Crystal Mgt. v Mullen (supra) the question to be decided was whether the occupant of the premises was a “tenant” within the meaning of the Rent Stabilization Law of 1969 and the Rent Stabilization Code. The analogous question to be decided here is whether the presence of respondents in the Capitol Hall Hotel is a “required service” for intervenor tenants within the meaning of the METHISA Code. (See this court’s opinion in *796 W. T. Wang, Inc. v New York State Dept. of Taxation & Fin., 108 Misc 2d 641.) Deference to the C.A.B. would be especially inappropriate here. To allow the named respondents to be evicted while the matter crawls its way through administrative channels (see 520 East 81st St. Assoc. v Lenox Hill Hosp., 76 Misc 2d 892, 895, supra) would not only deprive the tenants of their services in the interim but also render any subsequent determination in their favor of dubious value since the centers would be out of possession and their space would be otherwise occupied.
SUMMARY JUDGMENT: THE MERITS
In response to the tenants’ motion to dismiss, the landlord has cross-moved for summary judgment based, in part, on the non sequitur that since named respondents are licensees and are not protected by the METHISA Code, the code cannot be invoked to bar their eviction. Although the specific rooms that the service centers occupy are registered with METHISA, the definition of “tenants” whom the code protects excludes an entity such as the Service Centers. (METHISA Code, § 2, subds Q], [k].) The tenants of the hotel are protected by the code, however, and it is that protection that is dispositive of these proceedings.
The substantive issue is whether the space and services provided by the respondent Service Centers constitute “required services” as defined in subdivision (p) of section 2 of the METHISA Code:
“‘Required Services’ — That space and those services which were furnished or were required to be furnished for the hotel dwelling unit on May 31, 1968 or on the date of the initial commencement of the tenancy whichever is later. These shall to the extent so furnished or required to be furnished, include repairs, decorating and maintenance.
“Where services to a hotel tenant were provided by an independent contractor pursuant to a contract with the owner such charges shall be excluded from the provisions of this Code, provided that the tenant, if he wanted the service, paid for the same separately on 5/31/68 or on the commencement of his tenancy if subsequent thereto. In addition, charges made to the tenant by the owner for the account of the tenant based upon a charge of a personal *797 nature incurred by the permanent tenant, such as outgoing telephone calls, laundry, valet, bar and food which are not customarily included in his rent, shall be excluded from the provisions of this Code. Owner shall comply with the requirements of the Housing Maintenance Code that each dwelling unit must be painted at least once every three years.” (Emphasis added.)
Neither of the Service Centers provided its services to the Capitol Hall Hotel tenants on May 31,1968, but many of the tenants moved into the facility in the past three or four years, after these Service Centers were established, and it is undisputed that they chose or were referred to this particular hotel relying in part on the availability of the services that the named respondents provide. The landlord’s claim that section YY51-6.0 (subd c, par [8]) of the Rent Stabilization Law (Administrative Code of City of New York, § YY51-6.0, subd c, par [8]) from which the METHISA Code is “derived”, uses the base date of May 31, 1968 and not the inception of the tenancy pales next to the plain meaning of the specific language of the code. It is quite reasonable for hotels and apartments to differ in this regard given the transient nature of most hotel dwelling in comparison to the relative perdurance of apartment living. Further, one of the main reasons people choose to live in hotels rather than in apartments is precisely the availability of many kinds of services.
Since respondents do not charge for their services except to the extent of Medicaid coverage, if there is any, they are not independent contractors within the meaning of the second paragraph of subdivision (p) of section 2 of the METHISA Code.
The landlord’s position that the services in question are “not direct building services” and “not services required by all hotels” belies the fact that for many of these SRO tenants the services provided by these respondents are as vital as heat, lighting and a new paint job every three years. (See METHISA Code, §2, subd [p].) Surely these services are no less worthy of protection than maintaining the same level of swimming, ice skating, sauna and children’s recreational facilities. (Blum v Conciliation & Appeals Bd., NYLJ, Feb. 1, 1971, p 18, col 1, affd 41 AD2d *798 699.) Nor are these services less crucial than a personecl elevator, a switchboard operator, air conditioners, or sand in the sandbox. (See Matter of Sommer v Prince, NYLJ, March 4, 1975, p 13, col 3, affd 55 AD2d 535, lv to app den 42 NY2d 801; CAB, Opn No. 3090.) The Service Center premises in which tenants receive aid, which allows them to remain in the community and to continue as paying tenants of the hotel, is no less a required service “than space in which more affluent residents swim, skate or sit.” (316 West 95th St. Hotel Corp. v Crisis Intervention Servs., L&T 67809/81, Civ Ct, NY County, Oct. 30, 1981 [Finger-hood, J.].)
But even if the services provided by named respondents were less important than they are they would still be “required services”. For the dispositive question under the code is the prevailing practice in the hotel on the base date — here the inception of the tenancies. (Matter of Fresh Meadows Assoc. v Conciliation & Appeals Bd., 88 Misc 2d 1003, 1004, supra.) The services here at issue were provided at the inception of intervenor’s tenancies. Accordingly, they are “required services” within the meaning of subdivision (p) of section 2 of the METHISA Code. Section 61 of the METHISA Code unequivocally prohibits the landlord from curtailing them: “The stabilization rents and other requirements provided in this code shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of dwelling units *** by modification of the services furnished or required to be furnished with the dwelling units, or otherwise.”
Given the degree to which many Capitol Hall tenants are dependent on the centers’ services, the court suspects that the landlord’s proposed withdrawal of these services may rise to the level of harassment aimed at removing the tenants themselves. (METHISA Code, § 52.) In any event, the instant summary proceedings must fail due to the protections afforded the tenant intervenors. The landlord’s motion for summary judgment is denied; the tenants’ is granted.
*799 Petitioner, of course, remains free to apply under section 43 of the°METHISA Code for rent adjustments. (See CAB, Opn No. 4710; Blum v Conciliation & Appeals Bd., supra.)