OPINION OF THE COURT
David B. Saxe, J.
Is an alcoholism treatment center located in a Bowery skid-row hotel that has provided comprehensive therapeutic, medical and counseling services free of charge to its residents, most of whom are chronic alcoholics, a “required service” under the Code of the Metropolitan Hotel Industry Stabilization Association, Inc. (METHISA)?
If it is, then the landlord, who is prohibited under section 61 of the METHISA Code from unilaterally reducing required services, will be required to continue to maintain such an alcoholic treatment center at the hotel.
Two of my colleagues, Judge Margaret Taylor (Saljen Realty Corp. v Human Resources Admin. Crisis Intervention Servs., 111 Misc 2d 791) and Judge Shirley Finger-hood (316 West 95th St. Hotel Corp. v Crisis Intervention Servs. (Civ Ct, NY County, L & T Part, Index No. *177 67809/81), have held in similar cases that these services are “required services” under the METHISA Code. I respectfully disagree and hold that they are not.
The intervening tenants’ motion to dismiss the petition and for summary judgment in this holdover proceeding brought to evict the alcoholism treatment center predicated on the theory that an eviction would constitute an impermissible diminution of a “required service” under the METHISA Code, is denied.
The respondent, Manhattan Bowery Corporation (MBC) is a licensed social services agency founded in 1967. Since 1973, it has operated a facility on the sixth floor of the Jane West Hotel (Hotel) in the bowery section of Manhattan.
MBC employs a counselor, registered nurse, an accredited social worker and a recreational therapist, in order to facilitate treatment programs located at the hotel for alcoholics and mentally ill persons, many of whom are tenants of the hotel.
There is no question that MBC performs a vital and important service for many of the hotel’s tenants, who, without it, might be unable to effectively cope with the stress of the outside world. It is uncontroverted that many of the tenants initially took occupancy at the hotel and chose to stay there predominantly on account of the services provided by MBC.
MBC became a tenant in 1973 under a written lease for a one-year term at a monthly rental of $250. Thereafter, it appears that rent payments to the hotel were discontinued. MBC has continued to render services free of charge to many of the hotel’s tenants, as well as many out-patients.
The hotel is a member of METHISA and its tenants are protected not only by the METHISA Code but by the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) and code (Administrative Code, § YY51-6.0, subd c, par [8]) from which the METHISA Code is derived.
The claim asserted by the intervening tenants forms the basis of this motion for summary judgment: That to allow the hotel to evict MBC would amount to a violation of the hotel tenant’s rights under the Rent Stabilization Law and *178 the METHISA Code, which prevents a landlord from unilaterally reducing essential services which the tenants received at the inception of their tenancies.
The applicable code sections are as follows:
a. section 61 of the methisa code: “The stabilization rents and other requirements provided in this Code shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of dwelling units by requiring the tenant to pay or obligate himself from membership or other fees, or by modification of the practices relating to payment of commissions or other charges, or by modification of the services furnished or required to be furnished with the dwelling units, or otherwise” (emphasis added).
B. SUBDIVISION (p) OF SECTION 2 OF THE METHISA CODE, in relevant part states: “‘Required Services’ — That space and those services which were furnished or were required to be furnished for the hotel dwelling unit on May 31,1968 or on the date of the initial commencement of the tenancy whichever is later. These shall to the extent so furnished or required to be furnished, include repairs, decorating and maintenance.”
I hold that a treatment center, such as MBC, is not a “required service” within the meaning of subdivision (p) of section 2 of the METHISA Code. In Saljen Realty Corp. (supra) and 316 West 95 St. Hotel Corp. (supra), which held that such services were “required services”, the courts placed primary reliance upon prior cases which held that services such as swimming pools, saunas, ice skating rinks and children’s recreation facilities (Blum v Conciliation & Appeals Bd., NYLJ, Feb. 1, 1971, p 18, col 1, affd 41 AD2d 699), as well as elevators, air conditioners and sand in a sandbox (Matter of Sommer v Prince, NYLJ, March 4, 1975, p 13, col 3, affd 55 AD2d 535, mot for lv to app den 42 NY2d 801) and playgrounds and sitting areas (Matter of Saxony Assoc. v Prince, NYLJ, Nov. 9, 1977, p 11, col 4) were “required services.” It was reasoned that an alcoholism rehabilitation treatment center is at least as important as and worthy of protection as those other services which had previously been held to be “required services” and thus *179 deserving of protection. (Saljen Realty Corp. v Human Resources Admin. Crisis Intervention Servs., supra.) While undoubtedly a treatment center may be more important than a swimming pool or sandbox, the issue is not one of importance, but rather one of statutory construction.
The primary consideration of courts in construing statutes is to ascertain and give effect to the intention of the legislative or other enacting body. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 92, subd a.) It appears that the evil that section 61 of the METHISA Code was intended to remedy was the unilateral curtailment by hotel landlords of certain types of hotel facilities. A literal reading of section 61 and subdivision (p) of section 2 of the METHISA Code, particularly in view of the broad and ambiguous meaning of the word “services”, could lead to results not intended at the time of its promulgation. In such cases, to avoid an unintended result, a statute will be given a rational interpretation consistent with achieving its purpose and with justice and common sense. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 96; Matter of Guardian Life Ins. Co. of Amer. v Chapman, 302 NY 226.)
Subdivision (p) of section 2 of the METHISA Code which defines “required services” does not state that the hotel owner, as opposed to some unrelated third party must be the actual supplier of the services. However, a proper reading of this section inescapably leads to the conclusion that services will not be deemed “required services” unless it is found that the hotel owner has, in fact, furnished them.
Nevertheless, services provided by a third party may be attributed to the hotel owner, where the hotel, by its actions has acquiesced and participated in the furnishing of such services or facilities. The issue is one of degree, and depends on the facts and circumstances of each case. I find that where, as here, the hotel has permitted MBC to occupy hotel space for a substantial period of time, and has induced tenants to reside at the hotel based upon its express or implied representations to the tenants that MBC’s services at the hotel premises would be available to them on a continuing basis, it is appropriate to characterize the hotel as the provider of the services.
*180 Although I have found that the hotel “provided” the services in question, the issue that must still be resolved is whether an alcoholic treatment facility may be characterized as a “required service” under the METHISA Code. I conclude that an alcoholic treatment center does not constitute a “required service”.
When the term “required services” (METHISA Code, § 2, subd [p]) is read in connection with section 61 of the METHISA Code, it is apparent that the purpose of these sections is to restrict landlords from curtailing the availability of services to tenants, where those services were reflected in the rental paid by the tenants. There is no basis here to support a finding that the maintenance of the treatment center was ever reflected in the rent paid by the tenants. The hotel never charged tenants a higher rental in order to facilitate the treatment center’s services to the tenants; MBC receives its funding elsewhere.
Nevertheless, even if I were to find that the maintenance of these services was included in the rental charged, I would still hold that the services of an alcoholic rehabilitation center were not envisioned within the definition of “required services” under subdivision (p) of section 2 of the METHISA Code. A reading of the pertinent code sections and the cases interpreting them (infra) indicates that only those types of facilities and services which have the capacity to be utilized or enjoyed by tenants as a genus, rather than those directed at a specified type of tenant, are within the scope of “required services”. A “required service” is one that must be closely related to the use and enjoyment of the premises in question — the apartment building or hotel. A treatment center is essentially a personal service, that is neither aimed at the general population of tenants nor is related to the use and enjoyment of hotel facilities. It is therefore not a “required service” within the definition of subdivision (p) of section 2 of the METHISA Code. Cases that have protected tenants from a landlord’s removal of swimming pools and saunas, for example, are consistent with this interpretation. A holding that an alcoholic treatment center is a “required service” would not be consistent with this interpretation. General words used in a statute should receive a limited construction in order to avoid *181 absurd, unjust or other objectionable results. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 113.) The word “services” must therefore be construed in a limited manner so as to serve the statutory purpose and void an absurd result.
If I were to hold otherwise, I would, in effect, be placing the burden of what should be essentially a public function (i.e., rehabilitation and treatment of alcoholics and mentally ill persons) upon the private sector. I do not think that this result was ever intended or envisioned by the draftsman of subdivision (p) of section 2 of the METHISA Code.
Having found that MBC’s activities and programs are not a “required service” under subdivision (p) of section 2 of the METHISA Code, the motion by the respondent tenants for summary judgment is denied.