■ LUKE LUCHETTI, Also Known as LUKE CARROL, et al., Appellants, v OFFICE OF RENT CONTROL, DEPARTMENT OF RENT AND HOUSING MAINTE-NANCE, HOUSING AND DEVELOPMENT ADMINISTRATION OF THE CITY OF NEW YORK, et al., Respondents.—Judgment, Supreme Court, New York County, entered February 6, 1974, dismissing the petition, affirmed, without costs or disbursements. Petitioners are tenants in the basement of a building on West 72d Street in New York City, which has been occupied by petitioner Luchetti since 1964 and by petitioner Rigai since 1966. The apartments involved were created in 1949 without proper building plans and therefore in violation of the building's certificate of occupancy. In 1971, petitioners applied to the District Rent Director to determine whether the accommodations involved were subject to rent control. The District Director found them to be controlled and fixed the rental at $1 per month. On protest, the rent was fixed at $100 and $85 per month, respectively, which were the sums paid previously by the tenants. Judicial review of that determination was not sought. The Rent Commissioner reopened the protest proceedings determined two years earlier, granted the landlord's protest revoking the prior orders, and declared that, pursuant to section 2 (subd f, par [9]) of the Rent, Eviction and Rehabilitation Regulation, since the premises had not been used for housing prior to February 1, 1947, they are not subject to rent control. Special Term held that the reopening of the protest was proper since the regulations allow superseding or revocation of any prior order, before commencement of judicial review, where the Commissioner finds that the order was the result of "illegality, irregularity in vital matters, or fraud." The Commissioner clearly had authority to reopen the protest to correct an illegality or irregularity (Administrative Code of the City of New York, § Y51-5.0, subd b; New York City Rent, Eviction and Rehabilitation Regulations, § 103). Furthermore, if anything is clear from the record submitted, it is that the premises were not used for residential purposes prior to 1947 and therefore were quite properly decontrolled. Nevertheless, although the record is barren of any evidence in support of such proposition, the dissent appears to speculate that implicit in the finding of the prior proceeding of 1971 is the existence of a fire hazard or other dangerous condition on the premises which would, perforce, mandate that the premises remain subject to rent control (Rent, Eviction and Rehabilitation Regulations, § 2, subd f, par [9]). However, the absence of a certificate of occupancy is not necessarily the concomitant of a certification of the existence of a fire or other hazard. To reach ultimately the conclusion, as the dissent does, that the premises are subject to rent control would require a remand to the Commissioner for a hearing to determine if statutory control of the premises should continue due to the existence of a hazard, though used for nonhousing purposes prior to February 1, 1947. Concur—Murphy, Lane and Nunez, JJ.; Markewich, J. P., and Lupiano, J., dissent in part in the following memorandum by Lupiano, J.: Lupiano, J. (dissenting in part). In this article 78 proceeding, petitioners appeal from a judgment of the Supreme Court, New York County, entered February 6, 1975, dismissing their petition. Petitioners are tenants residing in the basement at premises 344 West 72nd Street since 1964 and 1967, which premises are owned by the corporate respondent Chatsworth 72nd Street Corp. An historical exegesis, with relevant citations of applicable legal authority, is necessary to proper resolution of this appeal. Section Y51-3.0 (subd e, par 1, cl [b]; subd e, par 2) of the Administrative Code provides that housing accommodations created by a change from a nonhousing use to a housing use on or after February 1, 1947 are not included within the term "housing accommodations", i.e., are not

subject to rent control, provided "the space comprising such accommodations was devoted to a non-housing use" on February 1, 1947 *with the exception* that while in such exempt or noncontrol status, if such accommodations "are certified by a city agency having jurisdiction to be a fire hazard or in a continued dangerous condition or detrimental to life or health", they are *included* within the term "housing accommodations" subjecting them to rent control. The statute further provides that "the subsequent removal of the conditions on which such certification is based shall not cause any such housing accommodations to become exempt from or not subject to control" (Administrative Code, § Y51-3.0, subd e, par 1, cl [b]). This mandate is incorporated almost verbatim in section 2 (subd f, par [9]) of the New York City Rent, Eviction and Rehabilitation Regulations. On the application of the tenants, the District Rent Director found on June 30, 1971, that the demised premises were subject to rent control and established a maximum rent of $1 per month for each apartment. The landlord (Chatsworth 72nd St. Corp.) filed protests against the District Rent Director's orders on July 30, 1970. Subsequently, on November 26, 1971, the landlord instituted an article 78 proceeding for an order reviewing the denial of its protest by operation of law in that no written order and opinion was rendered by the Rent Commissioner within 90 days. Special Term rendered judgments remanding the proceedings to the Office of Rent Control for further processing. Of critical import is the fact that by order dated July 11, 1972, the Commissioner of the Department of Rent and Housing Maintenance on this remand, granted the landlord's protest in part by fixing the maximum rent at $85 per month as of June 30, 1971 with respect to the two housing accommodations (two-room studio apartments) utilized by petitioners. In delineating his reasons for such determination, the Commissioner made the following pertinent observations: "The landlord filed protests against these orders urging that the District Rent Office had no jurisdiction over the subject accommodations and reiterated that these accommodations were used as storage rooms until 1949 when · then rented and used for commercial occupancy as studios. The landlord further argues that [these premises] would nevertheless be decontrolled under Section 2f(9) since they were devoted to a non-housing use on February 1, 1947 and were created by a change thereafter * * * The landlord testified that * * * the tenants' illegal occupancy of the two subject apartments are at present holding up the issuance of a Certificate of Occupancy for the entire building. The landlord's attorney states that violations were placed against the entire building because of such illegal occupancy of the subject apartments * * * and that on March 22, the Department of Buildings instituted proceedings against the landlord in the Criminal Court for violations of the Administrative Code in the failure to obtain a proper Certificate of Occupancy * * * The Commissioner has reconsidered and reviewed the entire matter *de novo.* The record shows that there is no Certificate of Occupancy for the subject accommodations *and* that violations were placed against the building because of the illegal occupancy of said accommodations. *These accommodations therefore do not qualify for decontrol under Section 2f(9) of the Rent Regulations"* (emphasis supplied). Neither the landlord nor the tenants instituted an article 78 proceeding to review the Commissioner's order. Rather, the landlord commenced two summary nonpayment proceedings which were jointly tried in the Civil Court of the City of New York, basing its claim on the rent set in the July 11, 1972 order. The Civil Court found for the landlord in accordance with the Rent Commissioner's order *(Chatsworth 72nd St. Corp. v Rigai,* 71 Misc 2d 647). In connection with the tenants'

position that the Rent Commissioner's order was a *nullity,* the Civil Court concluded that the order was controlling and could not be attacked collaterally (p 651)—"the impact of the illegal occupancy on this renting has been settled, and is *res judicata".* Of even greater import, the court declared (p 651): "Even if this were not so, however, and this issue was entirely open for me on *de novo* review, I nevertheless reach precisely the same result as the rent office did. In this connection I note that I permitted a record to be made as if the issue were open, so that appropriate findings could be had * * * On the basis of that record * * * I conclude that nothing in [Multiple Dwelling Law, §§ 300–303] sanctions tenants' position". In affirming the final judgments of the Civil Court, the Appellate Term, First Department, in addition to the *res judicata* aspect, opined: " 'When the agency or body charged with the responsibility of implementing the statute makes a determination which has "warrant in the record and a reasonable basis in law", then the judicial function is exhausted and the Board's determination should be accepted by the courts. [Citing cases.]' *(Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept.,* 37 AD2d 437, 440)" *(Chatsworth 72nd St. Corp. v Rigai,* 74 Misc 2d 298, 299). This court affirmed the two orders of the Appellate Term on the *Per Curiam* at the Appellate Term and the opinion of Shainswit, J. at the Civil Court *(Chatsworth 72nd St. Corp. v Rigai,* 43 AD2d 685). Finally, on January 20, 1975, the Court of Appeals affirmed on the opinion of Shainswit, J. at the Civil Court (35 NY2d 984). However, on July 2, 1974, the Rent Commissioner (a new incumbent of that office) on his own motion directed reopening of the landlord's protest proceedings which culminated in the July 11, 1972 order on the ground that "evidence has come to [his attention] indicating that there is a basis for reopening the protest proceedings under the provisions of Section 103 of the Rent Regulations". Subdivision a of section 103 provides in pertinent part that the Commissioner may, "prior to the date on which a proceeding for judicial review has been commenced in the Supreme Court pursuant to Article 78 of the [CPLR], modify, supersede or revoke any order issued by him under these Regulations, [or under previous regulations], where he finds that such order was the result of illegality, irregularity in vital matters, or fraud". Subsequently, by order issued July 11, 1974 (prior to the Court of Appeals affirmance in *Chatsworth),* the Rent Commissioner determined that the subject accommodations are "not subject to control pursuant to the provisions of Section 2f(9) of the Regulations, effective as of the date of their first renting for residential purposes". Scrutiny of this order discloses that the Rent Commissioner found the issuance of the prior order (July 11, 1972) to be "an irregularity in vital matters" based upon the facts, with no narration of facts other than the observation that "The record in this particular case indicates that the area comprising the subject accommodations was used for storage purposes until 1949, after which time such space was converted to commercial and then residential use". The tenants immediately commenced a proceeding in the United States District Court, Southern District of New York, for a preliminary injunction against any rescission of the July 11, 1972 order. By order dated September 25, 1974, that court granted a temporary injunction until the Supreme Court of New York State shall have issued its decision in an article 78 proceeding to be brought hereafter by the tenants. By order to show cause dated October 3, 1974, the tenants instituted an article 78 proceeding to challenge the Rent Commissioner's July 2, 1974 order. In denying the tenants' application and dismissing their petition, Special Term declared: "The basis for the determination here challenged is that, having found on the evidence submitted that the

apartments at issue were not used as residences until after 1947, the Commissioner lacked jurisdiction to determine that the apartments should not be decontrolled—since they were never subject to control at all. This determination does not involve new facts, nor the reinterpretation of facts, but rather constitutes a finding that the legal construction based upon those facts was an 'irregularity in vital matters.' " Tenants now appeal to this court. "A recital of this complex procedure illustrates the reason for the traditional rule regarding finality of decisions, not only by courts, but also by quasi-judicial and administrative bodies and officers * * * This court * * * quoted from *People ex rel Finnegan v McBride* (226 NY 252) that 'Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result. A mere change of mind is insufficient. Further action must, where power is not entirely spent, be for cause, with good reasons and proper motives for the correction of improper action.' The latter statement was defined as meaning: 'Error may be corrected by setting it aside if it was the result of illegality, irregularity in vital matters, or fraud.' That statement was made regarding determinations of administrative bodies" *(Matter of Cupo v Mc-Goldrick,* 278 App Div 108, 111, 112). It is noted that the conclusive effect of the July 11, 1972 order holding the premises to be rent controlled and fixing a maximum rent is limited to matters within the jurisdiction of the Rent Commissioner. If he exceeds his jurisdiction and includes in his order matters for which there is no basis in law, then his decision cannot be given the effect of creating rights which are denied by the statute (Rent Control Law). Similarly, if the order is tainted by fraud or collusion, it cannot be given such effect. Consequently, this order was always open to attack as a nullity on the ground of lack of subject matter jurisdiction. However, this is a legal impediment and it is beyond cavil that such order could not be reconsidered for mere error as to questions of fact *(Matter of Murray v Teachers' Retirement Bd. of City of N. Y.,* 258 NY 389, 392–393). Clearly, a determination of the Rent Commissioner in a matter where he does not have jurisdiction can be attacked either directly or collaterally because it is void, but not so if it is based upon a legal power to act, but is erroneous as to some matter of fact or law *(People ex rel. Smith v Clarke,* 174 NY 259, 263). The July 11, 1974 order reopening the landlord's protest proceeding and vacating the July 2, 1972 order was made by a new incumbent of the office of Rent Commissioner. Patently, the July 2, 1972 order, unless fraudulent or illegal, is not subject to revision by the new administrator. His action is repeal rather than reconsideration *(Matter of Equitable Trust Co. of N. Y. v Hamilton,* 226 NY 241, 244–245). As aptly stated by Mr. Justice Cardozo: "Even later boards may rescind for illegality or fraud [citation]. Only the same board may rescind for misconception of the merits [citations]" *(Matter of Equitable Trust Co. of N. Y. v Hamilton, supra).* To reiterate, the prior Rent Commissioner in 1972 determined that the premises were rent controlled, i.e., he had jurisdiction; the present Rent Commissioner in 1974 determined that the 1972 determination was tainted by irregularity in vital matters in that the requisite jurisdiction was never present. Subject matter jurisdiction insofar as the Rent Commissioner is concerned is prescribed by the Rent Control Law and the Rent Regulations promulgated thereunder. It can neither be added to nor abstracted from by the agreement of the parties. The "facts" delineated in the July 11, 1974 order as warranting repeal of the July 2, 1972 order and as alluded to in

respondent Office of Rent Control's memorandum of law in support of its cross motion at Special Term and in Special Term's memorandum decision are that the subject housing accommodations were used for storage purposes until 1949, after which time such space was converted to commercial and then residential use. This myopic view fails to note that these facts were considered by the Rent Commissioner in 1972 *in addition* to the critical facts that there was no certificate of occupancy for the subject accommodations and that violations were placed against the building because of such illegal occupancy and fails to take cognizance of section 2 (subd f, par [9]) of the Regulations read as a whole. Thus, the July 2, 1972 order narrates the supportive express findings of the basic and jurisdictional facts conditioning the exercise of the Rent Commissioner's power. These findings are not disputed in the July 11, 1974 order. The only basis, therefore, justifying the repeal for irregularity in vital matters is that the conclusion reached by the Rent Commissioner in the 1972 order is not warranted by those findings. In effect, the incumbent Rent Commissioner is disputing the interpretation placed upon section 2 (subd f, par [9]) of the Regulations by his predecessor. No other conclusion is warranted by this record. In 1972, the Rent Commissioner perforce viewed the violations placed against the building because of the illegal occupancy as falling within the ambit of the latter part of section 2 (subd f, par [9]) which provides for control status if the accommodations are "certified by a City agency having jurisdiction to be a fire hazard or in a continued dangerous condition or detrimental to life or health". If the statutory interpretation of the Rent Commissioner in 1972 has some basis in law, the mere disagreement as to that interpretation by a subsequent incumbent does not constitute an "irregularity in vital matters" sufficient to justify repeal of orders based upon the former interpretation. In this regard, it is noted that "While the courts will give due weight to the administrative construction of a statute such construction is not controlling upon the courts and cannot control the action of the courts. It is fundamental that the construction of a statute is a matter for the courts, whose jurisdiction in this regard cannot be ousted by administrative or executive authority" (1 NY Jur, Administrative Law, § 92). Where the administrative agency in the discharge of its duties is called upon to construe and apply a statutory provision *under which it functions,* "such construction is given great weight by the courts in determining the judicial construction of the law. The same is true in regard to an administrative agency's construction of its own regulations" (1 NY Jur, Administrative Law, § 88). As a corollary to this principle, it is noted that "Such interpretations are controlling on the court unless clearly erroneous. Where a regulation is not inconsistent with and does not exceed the authority granted by the statute, the interpretation of the regulation by the commissioner is controlling, and will not be disturbed. in the absence of weighty reasons" (1 NY Jur, Administrative Law, § 108). The interpretation placed upon section 2 (subd f, par [9]) of the Regulations by the Rent Commissioner in 1972 does not appear to be unreasonable and should be accorded considerable weight unless *clearly* unreasonable or contrary to law. Relevant to this aspect, the fact that the Civil Court considered *de novo* the issue of whether the 1972 order was a nullity and found it to be warranted by the record and to have a basis in law and that this determination was affirmed throughout the appellate process, lends inferential support to the legal conclusion that the 1972 order is not tainted by "irregularity in vital matters". This issue, in the context of the instant article 78 proceeding, is one of law and no basis is presented warranting remand to the Rent Commissioner for the purpose of taking additional

testimony as to factual issues. Therefore, I conclude that while the incumbent Rent Commissioner may wish to adopt an interpretation of section 2 (subd f, par [9]) of the Regulations different from that of his predecessor, this change of mind may not serve to repeal the July 2, 1972 order unless the interpretation underlying that order is patently unreasonable or contrary to law. I further conclude that under the doctrine of practical construction, the remedial aspect of section 2 (subd f, par [9]) warrants an interpretation with that degree of liberality essential to the attainment of the end in view. The declaration and findings set forth in the Administrative Code in justification of residential rent control specifically delineate protection of the public health, safety and general welfare (Administrative Code, § Y51-1.0). Thus, the statute (Rent Control Law) and the Rent Regulations promulgated thereunder should be freely interpreted to carry out this legislative intent. In the instant matter, the liberal construction of the terms of section 2 (subd f, par [9]) of the Regulations engaged in by the Rent Commissioner in 1972 may be easily countenanced. Accordingly, the judgment of the Supreme Court, New York County, entered February 6, 1975, denying petitioners' application and dismissing their petition, should be reversed, on the law, without costs and disbursements, and the application should be granted.