■ In the Matter of ALCOMA CORP., Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.—Order, Supreme Court, New York County (Carol Arber, J.) entered March 16, 1990, which, *inter alia,* denied petitioner's CPLR article 78 petition seeking to annul an order of respondent State Division of Housing and Community Renewal ("DHCR"), affirmed, without costs.

Respondent tenant entered into a lease for a one bedroom apartment at $1,650 per month with petitioner on September 15, 1982. Respondent was the first rent stabilized tenant in said apartment, the apartment having previously been controlled.

The tenant filed a Fair Market Rent Appeal ("FMRA").

Petitioner landlord asserted that it had timely mailed the required notice to tenant (a "DC-2 Notice") and that the tenant's FMRA was defective as untimely. In February 1985, the DHCR rejected the owner's defense, granted the tenant's FMRA and lowered the monthly rent to $681.88.

The landlord filed a Petition for Administrative Review ("PAR") and the proceeding was remanded for a hearing. The Administrative Law Judge ("ALJ") found that the landlord had sent the tenant the DC-2 Notice by regular mail, with a certificate of mailing in 1982, and that the tenant had failed to timely institute the FMRA. The District Rent Administrator upheld the ALJ's findings, and the Deputy Commissioner affirmed said order.

The tenant commenced an article 78 proceeding and Supreme Court remanded the matter for a determination as to whether the DC-2 Notice had been sent to tenant via certified mail. DHCR concluded that, although the DC-2 Notice had not been sent by certified mail as required by statute, the tenant had received the Notice and had failed to timely file the FMRA. The tenant sought reconsideration and DHCR reversed its prior determination upon the grounds that the DC-2 Notice had not been sent by certified mail as required by statute.

Petitioner commenced this article 78 proceeding seeking to annul the DHCR's final order as being arbitrary and capri-

cious and sought discovery with regard to its allegation that the DHCR's decision was based on the *ex parte* communications with the tenant and local politicians. The IAS court dismissed the landlord's petition finding that the DHCR's order was rational and the request for additional discovery was denied as moot.

While petitioner claims that the tenant's FMRA was untimely, it is undisputed that petitioner never notified the tenant by certified mail of her right to file a "FMRA".

Rent Stabilization Law (Administrative Code of City of New York) § 26-513 (d) (former § YY51-6.0.2 [d]) provides in respect to FMRA that the landlord shall give notice "by certified mail". The statute is unambiguous, and it is undisputed that petitioner failed to properly serve the DC-2 Notice upon the tenant and thus, the tenant's FMRA was not untimely. The order of the DHCR was rational and in accordance with the law and the IAS court properly upheld the determination. *(See, Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd.,* 112 AD2d 72, 76, *affd for reasons stated* 66 NY2d 1032.) Further, where as herein, the Commissioner finds, that a prior "order was the result of * * * irregularity in vital matters" he is empowered "upon notice to all parties affected", to "issue a superseding order modifying or revoking" the prior order (Rent Stabilization Code [9 NYCRR] § 2529.9; *see, e.g., Luchetti v Office of Rent Control,* 49 AD2d 532). We have considered petitioner's other claims and find them to be of no merit. Concur—Ross, Kassal and Rubin, JJ.

Sullivan, J. P., dissents in a memorandum as follows: In this CPLR article 78 proceeding on appeal from a dismissal by the IAS court, the owner and landlord of premises located at 170 East 78th Street in Manhattan seeks annulment of an order of the Division of Housing and Community Renewal (DHCR) finding timely the challenge of the tenant of a rent-stabilized apartment to her initial legal regulated rent. In three prior orders the DHCR had found the tenant's rent challenge to be time-barred.

The apartment in question was subject to the city rent law (rent control) until June 1982, when the last rent-controlled tenant vacated. Thereafter, on September 9, 1982, the tenant signed a two-year lease, effective September 15, 1982, for the apartment. Since the tenant was the first rent-stabilized tenant in occupancy, the owner, pursuant to the Rent Stabilization Law (RSL) and Code, was entitled to charge a free market rent, subject to a limited right of challenge by the tenant. The owner and the tenant agreed upon a monthly rental of $1,650.

Pursuant to the RSL and Code, the owner was required to serve the tenant with a DC-2 notice informing the tenant of her right to file a challenge, known as a "Fair Market Rent Appeal", to the free market rent if the tenant believed the rent to be in excess of the "fair market rent", which is based upon the prior rent under rent control as increased by various regulatory formulae. The Code further provided that if the tenant does not file such an appeal within 90 days of receipt of the DC-2 notice the free market rent provided for in the lease shall become the legal rent for the apartment.

In the instant case, the owner, on September 23, 1982, served, by mail, a DC-2 notice on the tenant and, as proof of service, obtained a certificate of mailing. The tenant did not file a Fair Market Rent Appeal with the Conciliation and Appeals Board (CAB) until January 9, 1984, almost 16 months later. The owner challenged the timeliness of the appeal, annexing to its answer a copy of the DC-2 notice, along with proof of mailing. On February 1, 1985, the DHCR District Rent Administrator (DRA) granted the tenant's Fair Market Rent Appeal and reduced the monthly rent for the apartment from $1,650 to $681.88.

The owner thereafter filed a Petition for Administrative Review (PAR), asserting the untimeliness of the tenant's Fair Market Rent Appeal. In opposition, the tenant claimed that she never received the DC-2 notice; she also alleged that, in any event, the notice was sent by regular, rather than certified, mail, which, she insisted, was a statutory requirement. In a December 30, 1985 order, DHCR's Commissioner granted the owner's PAR, finding "a triable issue of fact as to the alleged service of the DC-2 notice" and remanding the matter for a hearing to determine "whether or not the tenant was served with a DC-2 notice."

In accordance with that order, a DHCR Administrative Law Judge (ALJ) held hearings, at which the tenant again denied ever receiving the DC-2 notice and continued to assert the legal inadequacy of the owner's mailing by a certificate of mailing rather than by certified mail. In his report to the DRA, the ALJ discredited the tenant's testimony with respect to the DC-2 notice and found that it was "received by [her] at the subject premises more than 90 days before she filed her Fair Market Rent Appeal dated January 9, 1984." Based on these findings, the DRA, on October 14, 1986, denied the tenant's Fair Market Rent Appeal as untimely, finding that the tenant's application was filed more than 90 days after receipt of the DC-2 notice.

The tenant thereafter filed a PAR, reiterating her claim that she never received the DC-2 notice and that service thereof by a certificate of mailing, rather than by certified mail, violated the RSL and Code. On July 15, 1987, the Commissioner denied the PAR, finding that since the tenant was actually served with the DC-2 notice, she could no longer challenge the initial legal regulated rent of the apartment. The tenant then commenced an article 78 proceeding, which was remanded to the DHCR. Sixteen months later, on January 31, 1989, the Commissioner issued yet another order, determining—on the basis of the finding at the administrative hearing that the tenant actually received the DC-2 notice—the Fair Market Rent Appeal to be untimely.

Thereafter, on February 15, 1989, the owner's attorney received a copy of a February 10, 1989 letter from an Assistant DHCR Commissioner to the tenant advising her, based on an earlier telephone conversation between them, that the DHCR was reviewing the matter to determine whether it should be reopened. On February 15, 1989, before the owner's letter objecting to such procedure was received, the DHCR wrote to the tenant advising her that the matter was being reopened "due to an irregularity in a vital matter", since "service of the DC-2 notice was not made in the statutorily mandated manner." As the owner was later to learn, several politicians had written to the DHCR in the tenant's behalf, arguing that the RSL and Code required service of the DC-2 notice by certified mail before the 90-day period in which to appeal began to run. On May 23, 1989, the DHCR granted the tenant's 1986 PAR, finding the owner's failure to serve the DC-2 notice by certified mail to be fatal.

The owner thereafter commenced this proceeding challenging that determination and including in its petition a cause of action pursuant to 42 USC § 1983 alleging that the DHCR had acted under color of law to deprive it of its constitutional rights. The tenant answered. The DHCR cross-moved to dismiss the section 1983 cause of action; no relief was sought with respect to the other claims in the petition. By separate motion, the owner sought disclosure, including the production of documents relating to the *ex parte* communications which the DHCR and the tenant conceded had taken place just prior to the issuance of the challenged order.

The court dismissed the petition in its entirety, finding the DHCR order to be rationally based since the owner could not prove compliance with the statutory requirement of service of the DC-2 notice by certified mail. The court held that the *ex*

*parte* communications complained of were "mere expressions of concern by local assembly persons and politicians for one of their constituents." The DHCR's motion to dismiss the section 1983 cause of action, as well as the owner's discovery motion, was denied as moot. I would grant the petition to the extent of annulling the DHCR determination.

Section 26 (A) of the Code of the Rent Stabilization Association of New York City, Inc. (Code), which states the manner in which a DC-2 notice must be served, provides in relevant part: "All tenants who are entitled to apply for an adjustment of the initial legal regulated rent pursuant to Section 25 of this Code shall be entitled to receive notice of such rent together with a statement as to the right of appeal on forms prescribed by the CAB. Such notice shall be served by the owner upon every such tenant by certified mail within 30 days after the promulgation of the form prescribed by the CAB, or within 30 days after the tenant takes occupancy, whichever is later."

Section 25 (D), which is separate and distinct from section 26 (A) and sets forth the Statute of Limitations for a Fair Market Rent Appeal filing, in pertinent part, provides, "Such application shall be rejected by the CAB where: * * * (3) the application is filed with the CAB later than 90 days after the tenant received the Initial Legal Regulated Rent Notice." The purpose behind the 90-day limitation is obvious. Owners are entitled to know within a reasonable time whether the rent being charged for a recently decontrolled apartment is lawful or subject to challenge in a Fair Market Rent Appeal. For that reason, the tenant must act promptly to reserve his or her rights; otherwise the rent becomes legal for all purposes.

In the challenged order, the DHCR held that the 90-day limitation does not begin to run, absent service of the DC-2 notice by certified mail in accordance with section 26 (A) of the Code. The order, however, is notably silent as to section 25 (D) (3), which speaks of the tenant's obligations and sets forth the 90-day limitation on filing a Fair Market Rent Appeal, providing that the 90-day period begins to run on actual receipt of the DC-2 notice. It is the latter section which is controlling in this case. Section 26 (A) speaks of the owner's obligations with respect to a DC-2 notice, providing that it "shall" be served by certified mail. Failure to comply with section 26 (A)'s certified mail requirement does not, however, toll the running of the 90-day limitation period, which, according to section 25 (D) (3), begins to run from the time the notice is "received" by the tenant. Non-compliance with the certified mailing requirement merely deprives the owner of the pre-

sumption of receipt, which would otherwise attach, and requires him to prove actual receipt. This is precisely the reason why, in this case, the DHCR Commissioner directed a hearing on the issue of service of the DC-2 notice. And, it is beyond dispute, as found by the ALJ after that hearing, that the tenant actually received the DC-2 notice more than 90 days before she filed her Fair Market Rent Appeal. Indeed, her testimony on that issue was found "not credible."

Moreover, in holding that the 90-day limitation does not begin to run unless the DC-2 notice has been served by certified mail, the DHCR made a significant departure from its past policy; it concedes that the Deputy Commissioner has held that actual receipt of the notice would satisfy section 26 (A) even though there had been no service by certified mail.

In upholding the DHCR's order, the IAS court held that the 90-day limitation had not begun to run because while the owner had submitted a certificate of mailing, it had not produced "a receipt for certified mail as required under the statute (RSL § 2523.1)". In fact, section 2523.1 is part of the amended Rent Stabilization Code (9 NYCRR), not the Rent Stabilization Law. In any event, it is the former Rent Stabilization Code, not the amended Code, effective May 1, 1987, which governs. Prior to that date, the Rent Stabilization Code was implemented by the Code of the Rent Stabilization Association of New York City, Inc. In this regard, the IAS court's mistake was crucial.

In contrast to the former Code, section 2523.1 of the amended Code provides that a Fair Market Rent Appeal must be filed "within 90 days of the certified mailing to the tenant of the notice pursuant to section 2522.3 of this Title." Similarly, section 2522.3 (c) (2) of the amended Code, which is analogous to section 25 (D) (3) of the former Code, provides that an appeal shall be dismissed where "the appeal is filed more than 90 days after the certified mailing to the tenant of the initial apartment registration, together with the notice pursuant to section 2523.1 of this Title [notice of initial legal registered rent]."

Thus, under both the agency policy and Code provision in effect at the time of the filing of the complaint, actual receipt of the DC-2 notice triggered the running of the 90-day limitation period. Under the amended Code, the 90-day period runs from the certified mailing of the notice. The DHCR erred by refusing to follow its own interpretation of former Code § 25 (D) (3). The IAS court compounded the error by referring to the amended Code, which is inapplicable.

The DHCR argues and the majority concludes that revocation of the Commissioner's January 31, 1989 order finding the tenant's appeal to be untimely was mandated because Rent Stabilization Law (Administrative Code of City of New York) § YY51-6.0.2 (now Administrative Code § 26-513) requires service of the DC-2 notice by certified mail before the 90-day limitation period begins to run. Aside from the fact that section YY51-6.0.2 (d), by its own language, does not apply to the instant case, it should be noted that the challenged determination makes no reference whatsoever to said section. The DHCR based its determination solely on section 26 (A) of the former Code. Thus, this newly minted argument may not be considered in support of the DHCR determination. As the Court of Appeals has noted, "A fundamental principle of administrative law long accepted by this court limits judicial review of an administrative determination solely to the grounds invoked by the agency, and if those grounds are insufficient or improper, the court is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis". *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 593.) Nor may the DHCR claim any special expertise insofar as the proper interpretation of the Rent Stabilization Law is concerned. Where all that is involved is a question of pure statutory reading and analysis, dependent only on an accurate apprehension of legislative intent, there is no reason to rely on any special competence or expertise of the administrative agency. *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459.)

Pursuant to Laws of 1971 (ch 371, § 6) rent-controlled or rent-stabilized apartments vacated on or after June 30, 1971 became decontrolled or destabilized. Three years later, the Legislature enacted the Emergency Tenant Protection Act of 1974 ([ETPA] L 1974, ch 576, § 4), which, *inter alia,* enabled New York City, upon a declaration of emergency, to subject formerly decontrolled or destabilized apartments to the provisions of the Rent Stabilization Law. (ETPA § 3.) The City Council adopted the ETPA, effective July 1, 1974.

Pursuant to section 12 of Laws of 1974 (ch 576), which established a mechanism for determining the initial stabilized rent of formerly decontrolled apartments, the RSL was amended to add Administrative Code § YY51-6.0.2 to govern Fair Market Rent Appeals. Section YY51-6.0.2 (b) gave tenants the right to challenge the initial stabilized rent of their formerly decontrolled apartments. Although these apartments would not be restabilized until July 1, 1974, section YY51-6.0.2

(b) made the right to file a Fair Market Rent Appeal retroactive for tenants who had first occupied formerly decontrolled apartments "on or after January first, nineteen hundred seventy-four". The retroactivity factor was a response to the dramatic increase—in anticipation of the City Council's adoption of the ETPA—in the rents of decontrolled apartments since the first of the year. Thus, section YY51-6.0.2 (b) was concerned solely with the rights of tenants already in occupancy as of July 1, 1974, the effective date of the ETPA.

In accordance therewith, section YY51-6.0.2 (d)* provided the mechanism by which landlords were to inform tenants who first occupied decontrolled apartments between January 1, 1974 and June 30, 1974 of their right to file a Fair Market Rent Appeal. The notice was to be served "[w]ithin thirty days after the local effective date of the emergency tenant protection act". Since the ETPA became effective in New York City on July 1, 1974, the notice referred to in section YY51-6.0.2 (d) had to be served no later than July 31, 1974. Thus, the explicit language of the section demonstrates that the only tenants who were to be notified were those who took occupancy between January 1, 1974 and June 30, 1974; any tenant who moved in thereafter could not possibly be served within "thirty days after the local effective date of the emergency tenant protection act". Since it is undisputed that the subject apartment became decontrolled in June 1982 and that the tenant took occupancy on September 15, 1982, any notice to which she was entitled as to her right to file a Fair Market Rent Appeal was not governed by section YY51-6.0.2 (d).

Moreover, in accordance with the provisions of section YY51-6.0.2 (d), the CAB, DHCR's predecessor, promulgated a form, called a DC-1 notice, for tenants already in occupancy on July 1, 1974, as well as an instruction sheet, which demonstrates that the CAB interpreted section YY51-6.0.2 (b) and (d) as only applying to tenants who took occupancy between January 1, 1974 and June 30, 1974. The Legislature's rationale for requiring certified mailing of the DC-1 notice is

---

* Section YY51-6.0.2 (d) provided: "Within thirty days after the local effective date of the emergency tenant protection act the owner of housing accommodations as to which an application for adjustment of the initial legal regulated rent may be made pursuant to subdivision b of this section shall give notice in writing by certified mail to the tenant of each such housing accommodation on a form prescribed by the conciliation and appeals board of the initial legal regulated rent for such housing accommodation and of such tenant's right to file an application for adjustment of the initial legal regulated rent of such housing accommodation."

obvious. The notice had to be mailed within a brief period of time, 30 days, to thousands of tenants already in occupancy, many of whom, the Legislature, by its enactment of section YY51-6.0.2, obviously believed had been overcharged. There is no similar statutory requirement for the service of a notice on tenants who moved into formerly decontrolled premises after the effective date of the ETPA.

Since there was no such statutory provision, the Rent Stabilization Association of New York City, Inc. promulgated sections 25 and 26 of the Rent Stabilization Code. Section 26 (A) directed the promulgation of a successor form to the DC-1. The CAB subsequently promulgated the DC-2 notice, which was the form of notice mailed to the tenant on September 23, 1982 by a certificate of mailing. Interestingly, the DC-2 notice promulgated by the CAB contains the following warning: "Your application must be filed with the Conciliation and Appeals Board within 90 days from receipt of this notice." Thus, a tenant receiving a DC-2 notice by certified mail, regular mail or personal delivery was on notice that he or she, if so disposed, had to file a Fair Market Rent Appeal within 90 days of receipt. As the ALJ has found, the tenant in the instant matter received such notice but failed to heed the warning.

Were I not persuaded that the challenged order cannot stand because of the untimeliness of the tenant's appeal, I would annul it in any event because of the unseemly involvement of several New York City politicians who lobbied DHCR, *ex parte,* for a determination in the tenant's favor. It is also clear that the tenant's "representative", the Chairperson of the New York State Tenant and Neighborhood Coalition, had extensive *ex parte* discussions with DHCR representatives with respect to the merits of her case. In that regard, it is well established that parties before an administrative tribunal are entitled to due process, both substantive and procedural. *(Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493, 505.) The determination must be fair and based solely on matters of record. *(Matter of Simpson v Wolansky,* 45 NY2d 876, 877, *affd* 38 NY2d 391.)* In fact, this mandate has been codified in section 307 (2) of the State Administrative Procedure Act, which bars agency communications, direct or indirect, "in connection with any issue of fact, with any person or party, [or], in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate." This prohibition was, in this case, honored in the breach.

In my view, the political pressure exerted in this matter and the *ex parte* communications prejudiced the owner on at least two occasions during the adjudicative process. The record reveals that in February 1989 the tenant began an *ex parte* campaign to persuade DHCR to "reconsider" its January 31, 1989 order finding her appeal untimely. As even the IAS court found the DHCR had determined that there had been an "irregularity" in its order even before it notified the owner of the tenant's *ex parte* overtures. Shortly thereafter, on May 23, 1989, the order granting the tenant's 1986 PAR and reversing three prior DHCR orders was issued. Earlier, and shortly after DHCR issued its July 15, 1987 order finding the tenant's Fair Market Rent Appeal to be untimely, several New York City politicians and the Chairperson of the New York State Tenant and Neighborhood Coalition communicated by letter, *ex parte,* with DHCR, arguing that it had erred and urging reversal of its determination. Indeed, the letters are, in effect, legal briefs supporting the tenant's position. Immediately after receiving these letters, DHCR declined to defend its order and, in the tenant's 1987 article 78 proceeding, requested that the matter be remitted to it for reconsideration. DHCR's affidavit seeking such relief is dated August 19, 1987. The letters are dated August 12, August 13 and August 15, respectively. It does not seem inapt to conclude that DHCR's decision to request a remand was prompted by this outside pressure.

This court has held that *ex parte* communications between a party and the Hearing Examiner are sufficient to mandate the annulment of a challenged determination since they violate procedural due process. *(Matter of Signet Constr. Corp. v Goldin,* 99 AD2d 431, 432.) Nor is the mischief lessened because these *ex parte* communications were ultimately re-vealed to the owner. The owner never saw the 1987 letters, which seemingly played a role in DHCR's decision to seek a remand of the tenant's article 78 proceeding and may well have been a factor in the determination under review, until early 1989. Moreover, as the IAS court noted, by the time the owner because aware of the tenant's 1987 *ex parte* campaign, the DHCR had already, without any prior notice, decided to reopen the matter. At that point, the die was cast.

Accordingly, the petition should be granted to the extent of annulling the challenged determination. As to the claim under 42 USC § 1988 for attorney's fees and reasonable costs, the owner has failed to allege that what occurred here is part of an "official policy" on DHCR's part so as to constitute a violation of a right under section 1983. *(See, Pembaur v City of*

*Cincinnati,* 475 US 469.) Thus, that part of the petition should be dismissed on the merits.