■ In the Matter of HOWARD-CAROL TENANTS' ASSOCIATION et al., Appellants, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent.— Judgment, Supreme Court, New York County, entered January 14, 1977, which denied the application and dismissed the petition in this CPLR article 78 proceeding brought to review respondent's determination that there had been no diminution of essential services by the landlord in reducing required janitorial services below that furnished on May 31, 1968, affirmed, without costs and without disbursements. Under rent stabilization, landlords are required to maintain essential services at the level provided on May 31, 1968, the base date. Petitioners-appellants, tenants in rent-stabilized apartments in a four-building housing complex in Forest Hills, filed complaints with the New York City Conciliation and Appeals Board (CAB) alleging, *inter alia,* that the landlord had reduced base date services with respect to porter and janitorial services by substituting an independent cleaning contractor to perform cleaning and porter services. Appellants contend that the owner reduced the number of janitorial employees from 20 on May 31, 1968 to 8 in January 1975, and maintain that the reduction effected a diminution in essential services. The CAB found that the tenants had failed to substantiate their claim as to a diminution of porter services. CAB primarily relied upon inspections of the premises which found the buildings to be clean. Special Term, in denying the application, confirmed the board's finding that there had been no diminution of services nor any impropriety in the landlord hiring an independent maintenance company to perform janitorial work previously done by employees of the owner. We are in agreement with Special Term's determination that the conclusion of the board was neither arbitrary nor capricious and is supported by the evidence. Although the owner is clearly obligated to provide the same level of essential services as were furnished on May 31, 1968, the base date, there is nothing to prohibit the owner from furnishing such services by independent contractors retained by the landlord. Here, the reduction in the number of employees to perform janitorial services from 20 to 8 is, on its face, a reduction in services. The board properly concluded that a cutback in the number of employees created a presumption that there has been a reduction in required services. Nevertheless, the board found that the presumption was rebutted by the results of five separate inspections which had been conducted and which found the premises to be clean. These inspections were fair and impartial and were conducted without prior notice to either party. Refuted were the assertions by the tenants that the buildings were not properly maintained. Accordingly, the board concluded that insufficient proof had been adduced to establish a decrease in the quality of the services furnished. The dissent relies upon one portion of the determination rendered by the board: "Absent objective criteria, it is impossible to determine the comparison between the May 31, 1968 and present day levels of facilities, equipment, maintenance and all of the other items comprising services. Accordingly, this Board must apply uniform standards for determining such issues." The dissent contends that respondent improperly determined that there had been no reduction in essential services and that the board's determination disregarded the provisions of the Rent Stabilization Code, "since it was admittedly unable 'to determine the comparison

between the May 31, 1968 and present day levels' ''. However, this overlooks that portion of the board's opinion which makes crystal clear that it did determine that there was no reduction in essential services, despite the reduction in the number of employees hired to perform such services. The board's determination was properly based upon the results of the impartial inspections that had been conducted. With due consideration to the nature of the claim made herein, there is hardly a better way to ascertain whether there had been a reduction in essential services than by impartial inspections of the premises conducted at various intervals without notice to either party. Overlooked by the dissent is the board's determination that janitorial and porter services were furnished on May 31, 1968, the base date. Thus, the CAB determination, immediately following the portion of the opinion relied upon by the dissent, reads as follows: "a cut-back since May 31, 1968 in the number of employees exclusively engaged in the care and maintenance of the subject premises gives rise to a presumption that there has occurred a corresponding reduction in base date services barred by the Law and Code and inconsistent with the guidelines system of rent increases on which rent stabilization is based. This presumption casts the burden of proof on the owner to establish that there was in fact no reduction of services. The Board finds that the owner has rebutted this presumption as evidenced by inspections conducted by a member of the staff of this Board on five (5) separate occasions, July 5 and 7 and December 12 and 4, 1975. These visits were at different hours of the day and evening in order to obtain a comprehensive inspection of the buildings. The results of these five visits showed that those areas of the buildings which are within the scope of a porter's responsibilities, including the cleaning of stairways, stairwells, hallways and other public areas, both inside and outside of the buildings were generally clean. The Office of Code Enforcement of the Department of Rent and Housing Maintenance also conducted inspections of the subject buildings on February 7, 1975, June 19, 1975, June 20, 1975 and October 24, 1975. The inspector's findings, although resulting in 49 building-wide violations, showed that only 4 violations relate to functions that are performed by porters. The Board finds that the tenants have failed to substantiate their claims of a diminution of porter service and this portion of the complaint is dismissed". The board's other findings and conclusions and the landlord's stipulation as to restoration of some services demonstrate that the board's finding that there was no diminution of essential services was fully supported by the evidence and was neither arbitrary nor capricious. It had a rational basis. We should not substitute our judgment for that of the administrative agency *(Matter of Colton v Berman,* 21 NY2d 322). Concur— Birns, Silverman, Evans and Fein, JJ.; Murphy, P. J., dissents in a memorandum as follows: Upon the complaints of various tenants in the four-building complex, the respondent Conciliation and Appeals Board rendered a determination that reads, in significant part, as follows: "Absent objective criteria, it is impossible to determine the comparison between the May 31, 1968 and present day levels of facilities, equipment, maintenance and all other items comprising services. Accordingly, this Board must apply uniform standards for determining such issue." Employing those uniform standards, the respondent found, to the extent here relevant, that there had not been any reduction in janitorial services since May 31, 1968, the base date. It is a well-settled principle that this court may review an administrative determination for errors of law alone *(Matter of Tompkins v Board of Regents of Univ. of State of N.Y.,* 299 NY 469, 474). Thus this court has the power and duty to make certain that an administrative agency has not

acted in excess of the grant of authority given it by statute or in disregard of the standard prescribed by the Legislature (*Matter of Guardian Life Ins. Co. of Amer. v Bohlinger,* 308 NY 174, 183). The Stabilization Code has been adopted pursuant to permission granted by legislation and it has been approved by the Housing and Development Administration. (Administrative Code of City of New York, § YY51-6.0.) The code is thus binding upon the respondent. The narrow question presented in this proceeding is whether the respondent rendered its determination in compliance with the code provision requiring services to be maintained on a level with those provided on May 31, 1968 (Code of Rent Stabilization Association, § 2[m]). The respondent made its determination in this proceeding in total disregard of the code criterion, since it was admittedly unable "to determine the comparison between the May 31, 1968 and present day levels". The code does not authorize the respondent to legislate "uniform standards" or to adopt any other arbitrary standards that might be formulated by individual inspectors. As the base date becomes more removed in time, it will become increasingly more difficult to prove the base level of services in any rent-stabilized building. The Stabilization Association should take cognizance of that fact and set up, with the approval of Housing and Development Association, alternative criteria for determining whether a stabilized building is in disrepair. I would reverse the judgment of the Supreme Court, New York County, entered January 14, 1977 and I would grant the petition annulling respondent's determination with the direction that this matter be remanded for a new hearing consistent herewith.