■ In the Matter of MID-STATE MANAGEMENT CORP., Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant.—Judgment, Supreme Court, New York County (Richard W. Wallach, J.), entered March 12, 1984, which granted a petition pursuant to CPLR article 78 by the owner of a rent-stabilized building and annulled an order and opinion of the New York City Conciliation and Appeals Board (CAB), unanimously reversed, on the law, without costs, the order of the CAB is reinstated and the petition is dismissed.

This proceeding arises out of the closing of a swimming pool located on the premises or adjacent to the petitioner's building at 2750 Homecrest Avenue, Brooklyn, New York, managed by Mid-State Management Corp. (Mid-State). New York State Division of Housing and Community Renewal (Division), which assumed the responsibilities of the CAB effective April 1, 1984, pursuant to Laws of 1983 (ch 403), appeals from a judgment of Supreme Court, New York County annulling an order of the CAB which found that pursuant to Code of the Rent Stabilization Association of New York City, Inc. (RSC) § 2 (m) (1), swimming pool services for the tenants of the subject building are a required service and that the charge for such service is subject to regulation under the Rent Stabilization Law (RSL) and Code.

The record before the CAB contained substantial evidence demonstrating that the use of the swimming pool adjacent to the building had been continuously provided for tenants of the premises since the base date May 31, 1968. The evidence was sufficient to support the CAB finding that the owner or a corporation controlled by the owner was (1) the holder of title in fee to the property on which the pool facilities were constructed, (2) the lessee of the pool facilities, (3) the managing agent for both the building and the pool simultaneously, and (4) actively and directly involved in the day-to-day operation and maintenance of the pool. The owner declined to produce documentary evidence bearing upon the legal relationship between the owner and the pool operator.

It is plain that a rational basis supports the CAB's order finding that there was common ownership directly or indirectly between the owner and the pool operator and that, therefore, the use of the pool is a required base date service, which the owner was required to continue.

Special Term, ignoring the abundance of evidence which supported the CAB's determination, made its own determination of the factual questions and vacated the CAB's order by reason of an alleged deficiency in the record which was patently due to the owner's refusal to submit documentation in its possession.

As the owner of a building subject to the Rent Stabilization Law, not only may the owner not raise rents or other charges above levels established under the RSL, it may not curtail any "required service". RSC § 2 (m) (1) defines required services as those services which were provided on the base date applicable to the subject premises.

Section 2 (m) (1) (a) (i) provides that where there was a separate charge for a required service on the base date, and there is "a common ownership directly or indirectly between the operator of any such services and the owner, any such charge shall be within the limitations of the RSL".

The CAB found, and its finding is reasonably supported by the record, that on the base date in 1968, the premises and the others sharing the swimming pool were all under Lefrak ownership, albeit different corporations were involved. The record showed that the pool was directly adjacent to the building. The building was owned by Hollywood Leasing Co. (Hollywood). The property on which the pool is situated is owned by Arcadia Leasing Corporation (Arcadia). The pool premises are leased to Malibu Leasing Corp. (Malibu). The principal stockholder of Hollywood, Arcadia and Malibu is Samuel J. Lefrak.

The pool itself was subleased and operated by an independent membership corporation, as required by law and zoning regulations, namely, Arcadia Sun & Swim Club, Inc., a non-profit corporation. However, Lefrak designated its directors and its operators. Mid-State, the managing agent for the Arcadia Sun & Swim Club, is a licensed real estate broker managing the premises for Hollywood. All problems relating to the pool were handled by an employee of Mid-State, and maintenance of the pool and surrounding premises was by employees of Mid-State wearing "Lefrak" uniforms.

Based upon this evidence, CAB found that (1) on May 31, 1968, the base date, and thereafter, the building and the pool were owned or leased by corporations with the same principal stockholder; (2) the building, pool and pool operator shared common managing agent and offices; (3) solicitations for membership in the pool were through the owner's office; (4) security for the pool was performed by the same guards as patrolled the other premises; (5) maintenance of the pool was performed by the building owner's maintenance staff; and (6) the pool operator shared a common place of business with the lessee, which had the same principal stockholder as the owner. No consideration for the lease is shown.

Accordingly, the CAB found that the use of the pool was a service provided by the owner for the tenants on the base date for required service, and thereafter. The CAB directed the owner to maintain the service for the upcoming and subsequent seasons.

The CAB further found that the fees charged to residents of

the premises to use the pool are subject to rent guideline increases permitted for a one-year renewal lease, excluding any vacancy increase for new members. The CAB further determined that fees charged to nonresidents are not subject to rent guidelines.

The issue is whether there was a rational basis for such determination. When premises are owned or controlled by different organizations, whether the purpose is to evade rent stabilization or some other purpose, RSC § 2 (m) (1) (a) provides: "for dwelling units subject to the RSL on June 30, 1974 or subject to the provisions of Section 421 or Section 423 of the Real Property Tax Law, and in the case of any required or ancillary services for which a separate charge was made on May 31, 1968 (i) where there is a common ownership directly or indirectly between the operator of any such services and the owner, any such charge shall be within the limitations of the RSL; (ii) where no such common ownership existed either on May 31, 1968 or on the effective date of the RSL and such services were provided on such effective date by an independent contractor pursuant to a contract with the owner such charges shall be excluded from the provisions of the Code".

There was a reasonable basis for the determination that there was common ownership, sufficient to subject the use of the pool to the regulation. Indirect common ownership was substantially demonstrated and there was a failure of the petitioner to show lack of common ownership.

To the extent that the finding of the CAB was premised upon the absence of evidence, it was the failure and refusal of petitioner to furnish the requested proof. The CAB was entitled to make its determination based on the available evidence provided such determination had a rational basis. Petitioner should not be heard to say that the required evidence was lacking when it withheld the requested data (*Matter of Howard-Carol Tenants' Assn. v New York City Conciliation & Appeals Bd.*, 64 AD2d 546, 547, *affd* 48 NY2d 768).

Special Term, disregarding the appropriate standards for review of administrative determinations, made its own findings of fact and asserted that the absence of evidence led to a contrary conclusion from the finding by the CAB. It further improperly ruled that some of the evidence before the CAB was irrelevant and proceeded to make its own findings without ever addressing the real issue before it, as to whether there was a rational basis for the CAB's determination.

The CAB has the power to interpret the Code and the law,

both as to what is common ownership and what are the required ancillary services (*Matter of Howard v Wyman,* 28 NY2d 434; *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.,* 94 AD2d 229, *affd* 61 NY2d 976).

The CAB did not act arbitrarily in determining that the petitioner provided the pool services, albeit by means of a nonprofit membership corporation, for a fee to the tenants (*Fresh Meadows Assoc. v Conciliation & Appeals Bd.,* 88 Misc 2d 1003, *affd* 55 AD2d 559, *affd* 42 NY2d 925; *Matter of Sovereign Apts. v New York City Rent Conciliation & Appeals Bd.,* 81 AD2d 769, *affd* 56 NY2d 586).

As these and other cases hold, an order of the CAB which is rationally based and in accordance with law is entitled to judicial affirmance.

The issue is not the truth or accuracy of the proof upon which the CAB based its determination. It was, rather, the reasonableness of the CAB's conclusions. Where such administrative determinations are made by the agency responsible for the administration of the law, the court is not to substitute its judgment for that of the agency. Even though the court might have decided differently were it in the agency's position, the court may not upset the agency's determination in the absence of a finding, not supported by this record, that the determination had no rational basis (*Matter of Plaza Mgt. Co. v City Rent Agency,* 48 AD2d 129, *affd* 37 NY2d 837; *Minton v Domb,* 63 AD2d 36; *Matter of Cale Dev. Co. v Conciliation & Appeals Bd., supra*). Concur—Sullivan, J. P., Carro, Fein, Kassal and Rosenberger, JJ.