[990 NYS2d 804]

In the Matter of SHEILA WASHINGTON, by Her Guardian, SELF-HELP COMMUNITY SERVICES, INC., Petitioner, v RUTHANNE VISNAUSKAS, as Commissioner of the New York City Department of Housing Preservation and Development, et al., Respondents.

Supreme Court, Kings County, July 28, 2014

APPEARANCES OF COUNSEL

*Lynn Horowitz* for petitioner.
*Kimberly Hardy* for respondents.

## OPINION OF THE COURT

YVONNE LEWIS, J.

This proceeding is brought pursuant to CPLR article 78 to review the decision and opinion by respondent, New York City Department of Housing Preservation and Development (HPD), dated June 3, 2013, denying a succession rights appeal and issuing a certificate of eviction (the SRA decision). The litigation arose from a December 17, 2012 HPD non-primary residence hearing initiated by the respondent, Lindsay Park Housing Corp. (Lindsay Park), regarding the occupancy status of the residence known as apartment 7B, 67 Manhattan Avenue, Brooklyn, NY (the apartment).

During the non-primary residence hearing, the parties— Lindsay Park, Sheila Washington, and James Middlebrook— stipulated that Mr. Middlebrook had vacated the apartment on May 31, 2009, and that the matter would be converted to a succession rights appeal for Ms. Washington by her guardian, Self-help Community Services (the petitioner). The petitioner submitted the application for the succession rights appeal on February 7, 2013, and it was reviewed and denied, resulting in the issuance of a certificate of eviction against Ms. Washington.

The petitioner filed an order to show cause on October 2, 2013, preliminarily enjoining Lindsay Park from initiating eviction actions against Ms. Washington pending a decision on the article 78 challenge to the SRA decision. The respondents contend that the SRA decision was at a minimum reasonable and supported by the record taken as a whole, had a rational basis, and should be enforced when taking into account the broad discretion agencies have in determining such matters. The petitioner argues that the SRA decision denying Ms. Washington succession rights had no rational basis, and was arbitrary and capricious with regard to the relationship between Ms. Washington and Mr. Middlebrook.

Factual Background

Lindsay Park is an article II housing company organized under the Private Housing Finance Law, also known as the

Mitchell-Lama Law. Lindsay Park is the owner of 67 Manhattan Avenue, Brooklyn, NY, and it entered into an agreement with James Middlebrook on April 9, 1965, making Mr. Middlebrook the tenant/cooperator of record for apartment 7B. From April 2008 to April 2010, Mr. Middlebrook submitted income affidavits listing himself and Ms. Washington, who he described as his "goddaughter," as the occupants of the apartment. Mr. Middlebrook vacated the apartment on May 31, 2009, and in 2011, Lindsay Park initiated a non-primary residence hearing against Mr. Middlebrook. During the hearing, the parties stipulated to convert the action into a succession case for Ms. Washington. Ms. Washington's guardian, Selfhelp Community Services, submitted an application for succession rights to the apartment with supporting documents on February 7, 2013. On June 3, 2013, after reviewing the application, the SRA decision was issued denying the succession rights application and issuing a certificate of eviction against Ms. Washington.

The SRA decision articulated a determination as to whether Ms. Washington met the requirements for succession rights under the Mitchell-Lama Law. The HPD sought proof: (a) that she resided in the apartment with Mr. Middlebrook, with it as her primary residence for the requisite co-residency period; (b) that she was included as an occupant of the apartment on relevant income affidavits; and (c) that she was Mr. Middlebrook's "family member" in accordance with the HPD definitions.

Arguments

The petitioner contends that the SRA decision is without a rational basis, is arbitrary and capricious, and unacceptable under the article 78 guidelines. The petitioner asserts that the crux of the SRA decision was the arbitrary determination that Ms. Washington and Mr. Middlebrook did not have the emotional commitment and interdependence required to meet the HPD definition of a "family member" relationship, relying baselessly on the findings that Ms. Washington and Mr. Middlebrook did not stay in contact after he vacated the apartment on May 31, 2009, and that their relationship while they lived together was that of roommates, not family members.

The petitioner explains Ms. Washington and Mr. Middlebrook's failure to stay in contact by arguing that Mr. Middlebrook intended to return to the apartment, but became ill while visiting family in Mississippi and was unable to. Also, Ms. Washington tried to contact Mr. Middlebrook but was unable to reach him or his family in Mississippi, and at some point his cell

phone was disconnected. Further, the SRA decision was made without a live evidentiary hearing, which the petitioner argues is essential to determining the veracity of Ms. Washington and Mr. Middlebrook's emotional commitment and interdependence. The petitioner dismisses as inconsequential the notion that Ms. Washington and Mr. Middlebrook lived together as roommates, solely out of convenience, pointing out that family members often live together out of convenience, but the familial relationship remains intact and perhaps strengthens nonetheless. The respondents argue that the SRA decision was a proper exercise of HPD's discretionary power based on a review of the documents submitted by the parties and an application of the relevant law. They aver that administrative agencies enjoy broad discretionary power over agency matters, and therefore the arbitrary and capricious standard is not difficult to overcome, requiring only the conclusion that HPD's determination was reasonable and supported by the record taken as a whole. The respondents emphasize the importance of the qualified family member requirement for succession rights to a Mitchell-Lama apartment, and the fact that a "goddaughter" is not a family member pursuant to the definition set forth in the Official Compilation of the Rules of the City of New York (RCNY); more specifically stated, 28 RCNY 3-02 (p) (2) (ii) (A). They proffer that Ms. Washington has not proved that a shared financial and emotional commitment and interdependence existed between her and Mr. Middlebrook. Consequently, the respondents conclude that the SRA decision was correct in determining that an eviction warrant would be issued for Ms. Washington. In support of that conclusion, the respondents point out that before she began her cotenancy with Mr. Middlebrook, Ms. Washington was involved in an eviction proceeding with her mother, and that she needed a place to live. Meanwhile, Mr. Middlebrook wanted or needed someone to live with, so they chose to live together out of mutual convenience.

The petitioner argues also that because the SRA decision determined that there was no emotional commitment and interdependence between Ms. Washington and Mr. Middlebrook without a live evidentiary hearing, based on inconsequential factors and absent consideration of the documentary evidence submitted by Ms. Washington, the decision was without a rational basis and was arbitrary and capricious. The respondents argue that the regulation under which the petitioner claims succession rights does not provide for a full evidentiary hearing

and that the petitioner lacks a protected property right, while HPD retains broad discretion in deciding who may succeed to an apartment. The respondents conclude that the petitioner has failed to meet the "family member" requirement for a succession in a Mitchell-Lama apartment, and therefore, that the SRA decision was made on a rational basis, using agency discretion, and taking into account the totality of the circumstances.

Discussion

According to the SRA decision, and undisputed by either party, there are three requirements that Ms. Washington must meet in order to qualify for succession rights to a Mitchell-Lama apartment. Those requirements are (a) proof that Ms. Washington resided in the subject apartment with Mr. Middlebrook for the requisite co-residency period; (b) that Ms. Washington was included as an occupant of the apartment on relevant income affidavits; (c) that Ms. Washington is a qualified family member of Mr. Middlebrook according to HPD guidelines. The application denial turned on HPD's determination that Ms. Washington failed to meet the "family member" requirement for succession rights to the apartment.

The standard of review of an administrative finding is whether it was arbitrary and capricious or without a rational basis in the record (*see Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y.*, 94 AD2d 614 [1st Dept 1983], *affd* 62 NY2d 763 [1984]). The court may not substitute its judgment for that of the commissioner if the decision is rationally based in the record (*see Matter of Howard-Carol Tenants' Assn. v New York City Conciliation & Appeals Bd.*, 64 AD2d 546 [1st Dept 1978], *affd* 48 NY2d 768 [1979], *rearg denied* 48 NY2d 1027 [1980]). An aspect of the arbitrary and capricious test is that the reasonableness of an agency's determination must be judged solely on the grounds stated by the agency at the time of its determination (*see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753 [1991]).

The standard used by HPD to determine if Ms. Washington met the "family member" requirement is whether Ms. Washington and Mr. Middlebrook shared a financial and emotional commitment and interdependence in accordance with 28 RCNY 3-02 (p) (2) (ii) (B). The SRA decision excluded any consideration of the financial prong of the requirement because Ms. Washington's guardian, Selfhelp Community Services, managed her finances. The agency gave three reasons for its finding that there is no shared emotional commitment and interdependence be-

tween Ms. Washington and Mr. Middlebrook. First, HPD determined that the activities that Ms. Washington and Mr. Middlebrook did together, such as laundry and grocery shopping, did not in and of themselves create a family relationship, and more likely were indicative of a roommate-type relationship. Second, Ms. Washington moved in with Mr. Middlebrook who needed or wanted someone to live with him and assist him. She moved in at a time when she was involved in an eviction proceeding with her mother, and so, avers HPD, their relationship was for convenience and not based upon emotional commitment and interdependence. And third, Ms. Washington did not know where Mr. Middlebrook was going when he left for Mississippi, nor when he would return, or how to contact him, and subsequently had no contact with him for years, indicating a lack of emotional connection.

HPD must only prove that there was a rational basis for its findings while the petitioner has the elevated burden of proving that the agency decision was arbitrary and capricious or an abuse of discretion. Where an agency's decision is founded on a rational basis it should be affirmed even if the court would reach a different decision. (*See Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd.*, 112 AD2d 72 [1st Dept 1985], *affd* 66 NY2d 1032 [1985].) An agency's "determination will not be set aside by the courts unless it is unsupported by proof sufficient to satisfy a reasonable man, of all the facts necessary to be proved in order to authorize the determination" (*see Matter of Weber v Town of Cheektowaga*, 284 NY 377, 380 [1940]). "Generally speaking, discretionary issues are not issues of law, but even in such cases it may be urged that the bounds of discretion were exceeded." (*See Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 232 [1974].)

HPD has determined that Ms. Washington and Mr. Middlebrook were just roommates despite income and witness affidavits refuting that assertion. The Administrative Hearing Officer assumes Ms. Washington moved in with Mr. Middlebrook out of convenience based on an unsubstantiated connection to an eviction proceeding involving Ms. Washington's mother. And he surmises that because Ms. Washington and Mr. Middlebrook were out of contact for a long period, that they do not share an emotional relationship, despite assertions that Mr. Middlebrook's health issues were an intervening factor in his ability to

travel and communicate, and that Ms. Washington tried to contact him, together with affidavits supporting the existence of an emotional relationship. The information on the record does not rationally support the agency's conclusions. A rational basis cannot be formed from assumptions without sufficient facts to support them.

There are four witness affidavits saying that Ms. Washington and Mr. Middlebrook were often seen together doing things like shopping and laundry, and seemingly had a father-daughter relationship. Olga Perez stated that she thought Ms. Washington and Mr. Middlebrook actually were father and daughter, and Sonia Martinez wrote that Ms. Washington and Mr. Middlebrook were always together and that Mr. Middlebrook said that he and Ms. Washington were family. The SRA decision acknowledges these affidavits but fails to consider them, though they are compelling in favor of Ms. Washington's claims.

The evidence shows that Ms. Washington meets nearly all of the eight suggested criteria for determining financial and emotional commitment and interdependence as articulated in 28 RCNY 3-02 (p) (2) (ii) (B) (a)-(h); the court notes the following: (a) The longevity of the relationship: the record shows that Ms. Washington and Mr. Middlebrook have known each other for over 30 years; (b) the reliance on each other for payment of household expenses: Ms. Washington stated that she shared her $400 monthly allowance with Mr. Middlebrook to pay for household items. Mr. Middlebrook stated that he paid the maintenance for the apartment because he wanted to take care of Ms. Washington financially the way a father would his daughter; (c) the intermingling of finances: the SRA decision erroneously excused the intermingling of finances criteria in making its determination because Ms. Washington's finances are controlled by her guardian. There was no consideration of the fact that her guardian gave her a cash allowance every month which, notwithstanding the affidavit of her case manager could be and was easily commingled with that of Mr. Middlebrook; (d) participation in family activities: the record shows that Ms. Washington and Mr. Middlebrook shopped together, did household chores together, ate meals together, and celebrated birthdays and holidays together; (e) formalizing of legal obligations, intentions, and responsibilities to each other: the formalization of legal obligations is limited by Ms. Washington's guardianship status, but Ms. Washington was included on Mr. Middlebrook's income affidavits as an occupant of his apart-

ment and as his goddaughter, a goddaughter being a person for whom one has a moral/spiritual responsibility to care for; (f) holding themselves out as family members to family and society through words and actions: Ms. Washington was included as "goddaughter" on Mr. Middlebrook's income affidavits. While under HPD definitions, a "goddaughter" is not considered family, a godchild is considered family in many cultures in our society. Furthermore, Mr. Middlebrook told Sonia Martinez that he and Ms. Washington were family, and Olga Perez thought they were father and daughter; (g) regularly performing family functions, such as caring for each other or each other's extended family members: Ms. Washington stated that she took Mr. Middlebrook to doctors appointments and laid out his clothes for him. Neighbors' affidavits state that Ms. Washington and Mr. Middlebrook were always together doing different activities such as laundry and grocery shopping; (h) engaging in other patterns of behavior, or other action which evidences the intention of creating a long-term, emotionally committed relationship: Ms. Washington stated that Mr. Middlebrook took her into his home during a very difficult time in her life, and that for a long time, and especially after her father died in 1995, she and Mr. Middlebrook have shared a father-daughter relationship. Mr. Middlebrook stated that he paid the full maintenance for the apartment because he wanted to take care of Ms. Washington financially, like a father would for his daughter, and both asserted that they were very emotionally close to each other.

These assertions are not opposed in the SRA decision, instead they are largely ignored. The court does not find it plausible that a relationship of over 30 years would be emotionally extinguished by a few years without contact, particularly where, as here, both parties to the relationship swear that the relationship is ongoing and there existing no compelling evidence to the contrary. Nor does this court find it rational to conclude that Mr. Middlebrook took Ms. Washington into his home during a difficult period of her life solely because it was convenient for him, or that the four affidavits in support of Ms. Washington are insignificant.

The court finds that the weight of the evidence supports Ms. Washington's position. Absent contrary findings, there is compelling evidence on the record of the existence of an emotional commitment and interdependence between Ms. Washington and Mr. Middlebrook, and no rational basis for concluding otherwise. The court finds that HPD exceeded the bounds of its discretion

and arbitrarily concluded that Ms. Washington and Mr. Middlebrook did not share an emotional commitment and interdependence. Based on the record taken as a whole, and giving deference to the agency's broad discretion, it is unreasonable to conclude that Ms. Washington and Mr. Middlebrook were merely roommates. Broad agency discretion is not absolute agency discretion, and here the record contradicts the SRA decision very strongly, enough to require this court to find the decision to be arbitrary and capricious.

Accordingly, the petitioner's application is granted, pursuant to article 78, to set aside HPD's SRA decision dated June 3, 2013 and grant the petitioner succession rights to the apartment known as apartment 7B, 67 Manhattan Avenue, Brooklyn, NY. The respondents request to uphold the agency decision and issue a certificate of eviction is denied.